IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GOENGINEER, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PROGRESSION TECHNOLOGIES, INC., a Texas corporation; and JOHN FORBES,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br><br>Case No. 2:12-CV-930 TS |

This matter is before the Court on Defendants Progression Technologies, Inc. ("Progression"), and John Forbes' Motion to Dismiss for lack of personal jurisdiction. For the reasons stated below, the Court will grant Defendants' Motion.

I.  BACKGROUND

Both Plaintiff and Defendant Progression are value-added resellers ("VARs") of computer-aided design products designed and developed by SolidWorks Corporation. A VAR produces revenue both from the sale of a SolidWorks product and from obtaining software contracts with customers. These contracts often involve annual maintenance subscriptions and represent a predictable stream of revenue for a VAR.

1

Prior to January 1, 2011, Texas Engineering Systems LP ("TES") was a direct competitor of Progression in the Texas, Oklahoma, Louisiana and Arkansas ("TOLA") region. However, on January 1, 2011, Plaintiff acquired all of the assets of TES for approximately $3,000,000 and assumed TES's position as a VAR in the TOLA region.

When Plaintiff acquired TES, it decided not to keep some former TES employees, including Cindi Demaree, a member of TES's marketing department. While working for TES, Ms. Demaree had access to a marketing information system called "Vertical Response" that was used to track customer lists and marketing processes.

On March 2, 2011, Ms. Demaree used her TES credentials to access Vertical Response and create a new campaign called "Progression." Plaintiff alleges that Ms. Demaree used the Progression campaign to download a complete copy of GoEngineer's customer and prospect list for the TOLA region. Defendants deny that Ms. Demaree downloaded this information, claiming that the only way to access this information would be to have Vertical Response email the list to Ms. Demaree's TES email address, to which she no longer had access.

In May of 2011, Plaintiff became aware of the "Progression" campaign Ms. Demaree had created in Vertical Response. On May 19, 2011, Plaintiff's counsel sent a letter to Ms. Demaree, informing her that any use of the allegedly downloaded customer list would be a violation of the Utah Uniform Trade Secrets Act and would constitute intentional interference with economic relations.[1] The letter threatened an immediate lawsuit unless Ms. Demaree certified in a

---

[1] Docket No. 24-1 Ex. B, at 1-2.

notarized document that she and Progression had destroyed all copies of Plaintiff's proprietary information.[2]  John Forbes, Progression's President, was copied on this letter.[3]

Three letters were sent to GoEngineer in response to the letter sent by Plaintiff's counsel. First, Ms. Demaree sent a notarized affidavit to Plaintiff in which she stated that she "did not download or export all (or any) of GoEngineer's/TES customer list nor have I used any GoEngineer/TES customer lists while working with my new employer, Progression Technologies, Inc."[4]  Second, Defendants' counsel sent a letter to Plaintiff's counsel stating that Defendants did not have a GoEngineer customer list.[5]  Third, Mr. Forbes sent an email to Ken Coburn, Plaintiff's President, stating that Ms. Demaree had not downloaded Plaintiff's customer list, and had only accessed Vertical Response to provide a brief demonstration of the basic features of the Vertical Response system.[6]  Based on the representations provided by Ms. Demaree and Mr. Forbes, Plaintiff did not take legal action at that time.

Plaintiff alleges that during the summer of 2012, Dominic Salvo, a sales representative for Progression, obtained an account list from Ms. Demaree.  Mr. Salvo informed Mr. Forbes that he had received the account list, and received the following text message in response:  "Seek and

---

[2]*Id.*

[3]*Id.*

[4]*Id.* Ex. C.

[5]*Id.* Ex. D.

[6]*Id.* Ex. E.

destroy!!!!!!"[7]  Plaintiff alleges that when Mr. Salvo began making sales calls on the list, he repeatedly contacted active GoEngineer customers and became suspicious.  Plaintiff further alleges that when Mr. Salvo reported his discomfort with using the list he was fired by Mr. Forbes.

After being fired, Mr. Salvo contacted Mr. Coburn and informed him that Progressive was using a list containing many GoEngineer customers to make sales calls.  Plaintiff alleges that the account list used by Mr. Salvo was the customer and prospect list allegedly downloaded by Ms. Demaree.  Defendants claim that the list provided to Mr. Salvo was not downloaded from Vertical Response by Ms. Demaree, but was instead a list of nonproprietary contacts and leads obtained largely from public sources and common industry knowledge by Ms. Demaree while she was working at TES.  Ms. Demaree claims that she maintained this spreadsheet in a non-confidential manner on a TES laptop.  She further claims that TES sold her that laptop after she left the company without requiring her to remove the spreadsheet.  Plaintiff alleges that regardless of how Ms. Demaree obtained the list, it contains confidential and proprietary information and should not be used by Progressive.

On September 24, 2012, Mr. Forbes flew to Utah to meet with Mr. Coburn concerning Mr. Salvo's claims.  Mr. Forbes claims that this meeting was an attempt to explain that the list given to Mr. Salvo consisted only of non-confidential information and an attempt to prevent a lawsuit.

---

[7] *Id.* Ex. F.

## II.  DISCUSSION

Plaintiff carries the burden of establishing personal jurisdiction over Defendants.[8]  "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[9]  "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[10]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[11]  "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[12]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[13]

---

[8] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[9] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[10] *Sys. Designs, Inc. v. New Customware Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[11] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[12] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[13] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction. When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "arise out of or relate to those activities."[14] In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[15]

Defendants argue that the Court lacks personal jurisdiction over them. Plaintiff does not argue that the Court has general jurisdiction over Defendants. Therefore, the Court must determine whether specific jurisdiction exists. As set forth above, in order for specific jurisdiction to exist there must be "some act by which the defendant purposefully avails of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[16]

Plaintiff argues that personal jurisdiction is derived in this case from the effects test set out in *Calder v. Jones*.[17] *Calder* involved an allegedly defamatory article written and edited in Florida by a Florida resident, a reporter for the National Enquirer. The article, however, concerned the California activities of a California resident, impugned the professionalism of an entertainer whose television career was centered in California, was drawn from California

---

[14]*Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[15]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[16]*Id.*

[17]465 U.S. 783 (1984).

sources, and the brunt of the harm was suffered in California.[18]  Further, the defendants there knew that the brunt of the injury would be felt in California, where the plaintiff lived and worked and in which the National Enquirer had its largest circulation.[19]

In *Calder*, the Court found that personal jurisdiction existed in California as a result of the ties to that state.  The Court stated that "[a]n individual injured in California need not go to Florida to seek redress from persons, who, though remaining in Florida, knowingly cause the injury in California."[20]  However, the Court also stated that "[t]he mere fact that [the defendant] can 'foresee' that the article will be circulated and have an effect in [the forum state] is not sufficient for an assertion of jurisdiction."[21]

The Tenth Circuit has provided the following guidance concerning *Calder*:

Distilling *Calder* to its essence, we thus understand the Court to have found purposeful direction there because of the presence of (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew [plaintiff] was in California and her career revolved around the entertainment industry there).[22]

At this stage, where there is disputed evidence, the dispute is resolved in Plaintiff's favor and, as stated, Plaintiff must only prove a prima facie case of jurisdiction.  With this standard in

---

[18]*Id*. at 788-89.

[19]*Id*. at 789-90.

[20]*Id*. at 790.

[21]*Id*. at 789.

[22]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008).

mind, the Court turns to apply the facts of this case to the *Calder* effects test. Under this test, in order to have jurisdiction, the Court must find (a) an intentional action that was (b) expressly aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in the forum state.

Neither Defendant Forbes nor Defendant Progression have significant contacts with the state of Utah. Defendant Progression is a Texas corporation that does no business in Utah, has no employees in Utah, does not advertise in Utah, owns no property in Utah, and does not otherwise conduct any business in Utah. Likewise, Defendant Forbes is a resident of Texas and conducts no business in Utah.

The following communications were sent to Utah in response to a May 19, 2011, letter sent by Plaintiff to Defendants threatening an immediate lawsuit: (1) Ms. Demaree sent a notarized affidavit denying that she had downloaded the customer list; (2) Defendants' counsel sent a letter to Plaintiff's counsel stating that Defendants did not have a GoEngineer customer list; and (3) Mr. Forbes sent an email to Mr. Coburn, stating that Ms. Demaree had not downloaded Plaintiff's customer list. Finally, after learning that Mr. Salvo had accused Defendants of misappropriating Plaintiff's customer list, Mr. Forbes had a telephone conversation with Mr. Coburn and flew to Utah to meet with Mr. Coburn in order to deny or explain Mr. Salvo's claims.

Plaintiff strenuously argues that since Plaintiff's primary place of business is within Utah, any torts committed by Defendants were expressly aimed at Utah because the harm from those torts would be felt by Plaintiff in Utah. This argument must fail under Tenth Circuit precedent.

The Tenth Circuit has held that "plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state."[23]

> Our review of these post-*Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws.[37]

In *Far West Capital*, the Tenth Circuit examined a case where a Utah plaintiff sued a Nevada defendant for several business torts relating to a mineral rights lease on Nevada land.[38] The plaintiff argued that personal jurisdiction over the defendant was warranted in Utah because there was a flow of mail and telecommunications between the defendant and Utah, because the defendant retained an agent in Utah, and because the defendant maintained an escrow account in Utah. The Tenth Circuit rejected that argument, noting that "the focal point of this relationship was Nevada rather than Utah. In short, there is no indication that Utah had anything but a fortuitous role in the parties' past dealing or would have any role in their continuing relationship."[39] The court reasoned that the alleged tort did not have "any connection to Utah beyond plaintiff's corporate domicile. Although [plaintiff] argues that it suffered the financial

---

[23]*Shrader v. Biddinger,* 633 F.3d 1235, 1245 (10th Cir. 2011).

[37]*Far W. Capital,* 46 F.3d at 1079.

[38]*Id.* at 1071.

[39]*Id.* at 1080 (internal citation omitted).

effects of these alleged torts in Utah where it is incorporated, we hold that . . . the defendants' contacts with Utah are insufficient to establish personal jurisdiction . . . ."[40]

In *Grynberg v. Ivanhoe Energy, Inc.*, the Tenth Circuit further clarified its decision in *Far West Capital*, holding that:

> [T]he express aiming test focuses more on a defendant's intentions—where was the focal point of its purposive efforts—[as opposed to] . . . the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff. Although [s]ome courts have held that the expressly aimed portion of *Calder* is satisfied when the defendant individually target[s] a known forum resident, [w]e have taken a somewhat more restrictive approach, holding that the forum state itself must be the focal point of the tort.[41]

Defendants' actions in the present case were not aimed at Utah. The alleged theft of the customer and prospects list in this case occurred in Texas. The alleged customer and prospects list is a list of customers and prospects in the TOLA region. All of the alleged sales contacts were made to customers in the TOLA region. All damages to Plaintiff's business would occur in the TOLA region, and it is there that Plaintiff would lose existing or potential customers. The only damages that occur in Utah are flow-through financial damages to the bottom line of a corporation headquartered in Utah, and "causing financial injury to a Utah business 'has been flatly rejected by the Utah courts as a basis for exercising specific personal jurisdiction.'"[42]

Plaintiff nevertheless argues that because Defendants sent letters and an email to Utah denying that Ms. Demaree downloaded the database from Vertical Response, and because

---

[40]*Id.*

[41]2012 WL 2855777, at *8 (10th Cir. July 12, 2012) (internal quotations omitted).

[42]*Patriot Sys., Inc. v. C-Cubed Corp.*, 21 F. Supp. 2d 1318, 1321 (D. Utah 1998) (quoting *Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F. Supp. 608, 613 (D. Utah 1995)).

Defendant Forbes flew to Utah to explain what had occurred with Mr. Salvo, Defendants were expressly aiming their conduct at Utah. However, these acts, like the letters and communications in *Far West Capital*, do not indicate that the underlying tort was aimed at Utah. All of Defendants' contacts with Utah came in response to actions initiated in Utah by Plaintiff. It was Plaintiff's threat of litigation in a letter sent to Defendants that prompted Defendants to aim responsive communications at Utah. The fact that these communications had any relation to Utah is simply the fortuitous result of Plaintiff's decision to incorporate in Utah.

Additionally, "[o]nly contacts occurring prior to the event causing the litigation may be considered"[43] These communications all occurred in an attempt to resolve the matter outside of litigation as a result of Plaintiff's threatened litigation. The events allegedly causing this litigation is the theft of a customer list and Defendants subsequent use of that customer list. Defendants' attempts to explain the source of their information to Plaintiff are not contacts from which this litigation arose, and cannot be sufficient to allow this Court to exercise personal jurisdiction over Defendants.

---

[43] *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) (citing *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987)); *see Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 663 (E.D. Mich. 1996); *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287 n.2 (4th Cir. 1987); *Stein v. Horwitz*, 191 F.3d 448 (4th Cir. 1999).

## III.  CONCLUSION

Based on the foregoing, it is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 14) is GRANTED. Plaintiff's Complaint is DISMISSED without prejudice to Plaintiff bringing its claims in a court with proper jurisdiction.

The Clerk of the Court is directed to close this case forthwith.

DATED   December 4, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge